## Commonwealth, Appellant, *v.* Mervis.

*Municipalities—Ordinance—Police regulations—Parades and meetings—Class legislation—Discrimination.*

A municipality, under its general police power has a right to enact an ordinance forbidding street parades and meetings unless written notice of the object, time, place and route of the parade or meeting shall be given to the proper city authorities, and authorizing such authorities to designate the route of the parade and portion of streets to be occupied; but such an ordinance is invalid if it discriminates in favor of certain organizations where there is no natural or legitimate reason for such discrimination. Thus an ordinance of the kind in question which excepts from its operation parades or meetings of Grand Army posts and the State National Guard, is invalid.

Argued May 8, 1913. Appeal, No. 113, April T., 1913, by plaintiff, from order of County Court, Allegheny Co.,

No. 526, of 1912, reversing judgment of police magistrate in case of Commonwealth v. Samuel Mervis. Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ. Affirmed.

Appeal from judgment of police magistrate.

From the record it appeared that the defendant had been charged before the magistrate with holding a public meeting in the city of Pittsburg without notice thereof to the Bureau of Police and without a permit provided by the city ordinance.

The ordinance in question was as follows:

" That all street parades, processions, and street assemblages, occupying, assembling or marching upon any street, lane, alley, highway, wharf or public square of the City of Pittsburgh to the exclusion or interruption of other citizens in their individual right of the use thereof excepting posts of the Grand Army of the Republic, the National Guard of the State of Pennsylvania, funeral processions and the fire and police forces of the City of Pittsburgh are forbidden, unless written notice of the object, time, place or route of such procession, parade or assemblage and the character, purpose and names of the officers of the same be given by the chief officer thereof not less than twenty-four hours previous to its forming, assembling or marching, to the Superintendent of the Bureau of Police, and to protect the business interests of the citizens and to prevent delay in travel and to preserve peace and good order of the city, the said Superintendent of the Bureau of Police shall have the power and it shall be his duty, subject to the approval of the Director of the Department of Public Safety, to designate to such procession, parade or assemblage how much of the streets, lanes, alleys, highways, wharfs or public square it can occupy, and if parade or procession the time of starting, the length of time of such parade or procession, and the route of such parade or procession shall be determined upon by the

Superintendent of the Bureau of Police and approved by the Director of the Department of Public Safety, and when so designated and approved the proper officers of said parade, procession or assemblage shall be responsible that the designation and limitation set out are obeyed and complied with, and it shall be the duty of the said Superintendent of the Bureau of Police to furnish such escort as may be necessary to protect persons and property and maintain public peace and good order of the city.

"Any person or persons violating any of the provisions of this ordinance shall be punished by a fine of not less than $25.00 nor more than $100 for each offense, and in default of payment of said fine and costs, shall be committed to the common jail of Allegheny county or to the Allegheny county workhouse for a period of not more than thirty days."

The defendant was convicted before the magistrate and sentenced to pay a penalty of $25.00. On appeal the court of common pleas reversed the judgment and awarded restitution on the ground that the ordinance was discriminatory and invalid.

*Error assigned* was in reversing the judgment.

*Chas. O. O'Brien,* for appellant, cited: Wilson v. Eureka, 173 U. S. 32 (19 Sup. Ct. Repr. 317).

*Jacob Margolis,* for appellee, cited: Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355; State v. Dering, 84 Wis. 585.

OPINION BY HEAD, J., October 13, 1913:

The appellee was summarily convicted before a magistrate of the violation of an ordinance of the city of Pittsburg, and upon appeal to the county court that court reversed the judgment and the commonwealth took this writ. In the court below the validity of the or-

dinance was challenged on several grounds. We agree with that learned court it is too late to question the power of a municipality to enact police regulations of the general character of the one before us, or to successfully contend that such ordinances are an invasion of the private rights of the citizen because the power to issue licenses therein provided for is committed to the mayor or other like executive officer of the city. These questions have been ruled in the Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355, and Scranton v. Straff, 28 Pa. Superior Ct. 258.

The ordinance under which the defendant was convicted provided that, "All street parades, processions and street assemblages, occupying, assembling or marching upon any street, alley, etc., of the city of Pittsburg, to the exclusion or interruption of other citizens in their individual right of the use thereof—excepting Posts of the Grand Army of the Republic, the National Guard of the State of Pennsylvania, funeral processions and the fire and police forces of the city of Pittsburg—are forbidden unless written notice of the object, time, place and route of such processions, etc., be given," etc., and further authorizing the superintendent of police and the director of the department of public safety to designate the route of such parade, the portion of the streets, alleys, etc., to be occupied, etc.

The validity of this ordinance was further attacked on the ground that it was undue class legislation, not bearing upon all citizens alike and discriminating in favor of certain organizations, where there was no natural or legitimate reason for such discrimination. It was upon this ground the learned court declared the ordinance to be invalid and reversed the conviction and sentence.

Without here attempting to review the vast mass of authority on this subject, which was elaborately done in Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355, we content ourselves with a single quotation from one of the leading cases, Barbier v. Connoly, 113 U. S. 27, wherein

the proper scope and limitations of such ordinances are clearly set forth: "But neither the amendment (Fourteenth Amendment to the Constitution of the United States), broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people. . . . Such burdens are often necessary for general benefits. . . . Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed not to impose unequal or unnecessary restrictions upon anyone but to promote, with as little inconvenience as possible, the general good. Class legislation, discriminating against some and favoring others, is prohibited; but legislation which in carrying out a public purpose is limited in its application, if within the sphere of its operation it affects all persons similarly situated, is not within the amendment." A familiar instance of municipal legislation, of the character first referred to in the language above quoted, is the prohibition of the erection of buildings of a particular class within certain defined areas. Such municipal laws bear upon all alike within the defined limits, and their purpose is the protection of the entire community against loss by fire or injury to health because of the nature or use of the buildings prohibited. With that phase of municipal legislation we are not here and now concerned.

It may properly be noted, to avoid some confusion of thought, that it is not the function of the municipality, in the exercise of its police power, to express approval or disapproval of the purposes of organizations, not immoral or criminal, seeking to occupy the public streets for processions, parades and the like. As long as humanity has 'been what it is now, such exhibitions have drawn crowds of the idle, the curious, or of those in sympathy with the object to be attained, and the presence of such unusual crowds disturbs the public

travel on the streets and sidewalks and necessarily invites unusual police protection for the safety of all concerned and to prevent undue obstruction of the common and public right.

It would be as hackneyed as unnecessary to devote any time to a eulogy of what is known as the Grand Army of the Republic. Its purposes and the patriotic virtues of its members are part of the history of our country. But if the Society of the Cincinnati should desire to parade on Washington's Birthday, or the Military Order of the Loyal Legion on Grant's Anniversary, can any sound reason be offered why they should be subject to arrest and punishment unless they complied with the regulations of the ordinance, while the Grand Army of the Republic should not be bound by such prohibition? There are hundreds of societies, composed of men, women and children, organized for the purpose of advancing the causes of benevolence, charity, patriotism and the highest civic ideals, which can in no just way be discriminated against in favor of any particular society. The reason we think is apparent and we have already stated it.

We are not concerned with the right of the state of Pennsylvania to march its own troops along its own highways when engaged in the service of the state. We might well agree, if that question were in issue, that it would scarcely be the function of any municipality to stop the march of the officers and troops of the state itself whilst engaged in the public service. But the various organizations composing the National Guard continue to exist when not engaged in the active service of the state. They are accustomed to lend dignity and attractiveness to many civic ceremonies in which they participate with other organizations purely civil in their character. No other kind of a parade or procession has so many attractions for the crowd at large as the uniformed ranks of troops, the glittering sabers and glistening bayonets, and the necessity for regulation

of the incidents attending such parades is just as apparent as in other cases.

It may well be urged that there is something distinctive in a funeral procession. It is not only a work of charity but of necessity as well, that we bury the dead. These occasions are attended by a solemnity all their own; and experience has taught us there is, usually at least, little about them to encourage the presence of large bodies of citizens, while there is much to keep in serious and orderly mood those who may take part in them. When the question arises whether such an exception alone, to the general character of an ordinance such as we have before us, would amount to undue discrimination, it may be properly dealt with.

Without elaborating further we have sufficiently indicated the reasons that impel us to the same conclusion reached by the learned court below. The assignments of error are overruled.

Judgment affirmed.

