Nora O'Connor, Appellant, v. Patrick Hendrick, as Trustee
of School District No. 9, Town of Lima, Livingston County,
et al., Respondents.

1. Schools — Authority of Superintendent of Public Instruction
to Regulate Management. While under the Consolidated School Law
(L. 1894, ch. 556) the state superintendent of public instruction had no
express authority to establish regulations as to the management of the
public schools, such authority was clearly implied therein, the validity of
such regulations depending upon whether or not they were reasonable,
were consonant with the general purpose of the statute and were not
inconsistent with the laws and policy of the state.

2. Regulation as to Use of Religious Dress by Teachers. A
regulation established by such superintendent prohibiting teachers in
public schools from wearing a distinctly religious garb while engaged in
the work of teaching therein, is a reasonable and valid exercise of the
power conferred upon him, not because the wearers of such apparel
should be excluded from teaching in the public schools on account of
their religious convictions or membership in religious orders, since, if
otherwise qualified and by their acts as teachers they do not promote any
denominational doctrine or tenet, there is no reason, morally or legally,
why they should be disqualified, but because the influence of such apparel
is distinctly sectarian, even if the wearing of it does not amount to the
teaching of denominational doctrine, and the prohibition is in accord with
the public policy of the state as declared in the Constitution (Const. art. 9,
§ 4), forbidding the use of the property or credit of the state in aid of
sectarian influences.

3. Refusal to Comply with Regulation Forfeits Salary. A
refusal by teachers employed in a public school to comply with such
regulation after notification thereof, forfeits their right to further com-
pensation under their contract of employment, since one of the implied
obligations of such contract is to obey all reasonable regulations as to the
management of the school made by the superintendent, and, therefore, a
contention that he had no power to annul it is without force.

*O'Connor* v. *Hendrick*, 109 App. Div. 361, affirmed.

(Argued March 20, 1906; decided April 17, 1906.)

Appeal from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
December 7, 1905, affirming a judgment in favor of defend-
ants entered upon a decision of the court at a Trial Term
without a jury.

The plaintiff and Elizabeth E. Dowd, being teachers duly licensed to teach in the common schools of this state, entered into contracts with the board of trustees of school district No. 9, in the town of Lima, county of Livingston, in the autumn of 1902, to teach in the public school of said district for a term of thirty-six consecutive weeks at a specified rate of compensation. While so engaged in teaching they wore the distinctive dress or costume of a religious society connected with the Roman Catholic church, of which they were members, which society is known as the Order of the Sisterhood of St. Joseph. On May 28th, 1903, the state superintendent of public instruction promulgated a decision made by him upon an appeal under the Consolidated School Law (Laws of 1894, chapter 556, title XIV), in which he declared that the wearing of an unusual dress or garb, worn exclusively by members of one religious denomination for the purpose of indicating membership in that denomination, by the teachers in the public schools during school hours while teaching therein, constitutes a sectarian influence and the teaching of a denominational tenet or doctrine which ought not to be persisted in. The decision further declared it to be the duty of the school authorities to require such teachers to discontinue the wearing of such dress or garb while in the public school room and in the performance of their duties as teachers therein, and it directed Patrick Hendrick, one of the defendants herein, as sole trustee of school district No. 9, in the town of Lima, Livingston county, to notify the plaintiff and Elizabeth E. Dowd forthwith to discontinue, during the school hours of each school day, the wearing of the distinctive dress of the sisterhood to which they belonged, and commanded him to dismiss them if they refused to comply with this requirement. On May 29th, 1903, the said Patrick Hendrick notified the plaintiff and Elizabeth E. Dowd of the contents of the decision. Notwithstanding this notification they continued to teach school wearing the prohibited garb up to June 19th, 1903, which was the end of the school year. Mr. Hendrick, the school trustee, does not appear to have made any effort to

remove or dismiss them. The present action was brought against him by the plaintiff in her own behalf and as assignee of the claim of Elizabeth E. Dowd, to recover a balance of $79.20 alleged to be due under their contracts with the school district. Mr. Hendrick defended on the ground that the plaintiff and her assignor had lost all right to recover anything under their contracts by reason of the fact that they had continued to wear the distinctive costume of the religious sisterhood to which they belonged, while engaged in teaching, after they had received notice of the aforesaid decision of the state superintendent of public instruction. The other defendants, who were taxpayers allowed to intervene at their own instance, also interposed an answer setting up a similar defense. The case was tried by consent without a jury before a justice of the Supreme Court who held that the plaintiff was entitled to recover $25.20, being the amount of the compensation of the two teachers which had been earned, but not paid, prior to the time when they were notified of the superintendent's decision. He held, however, that the plaintiff and her assignor were not entitled to recover for any services rendered during the three weeks in which they continued to teach after the decision of the superintendent had been brought to their attention.

From the judgment rendered at the Trial Term, the plaintiff appealed to the Appellate Division, where that judgment has been affirmed by a divided court.

*John D. Lynn* and *Timothy J. Nighan* for appellant. The court erred in deciding that the decision of the state superintendent was a defense to plaintiff's cause of action or any portion of it. (*Lawrence* v. *Hunt,* 10 Wend. 80; *Ward* v. *Boyce,* 152 N. Y. 200; *Golpin* v. *Page,* 18 Wall. 350; *Yick Wo* v. *Hopkins,* 118 U. S. 356.) The superintendent has no authority in his judicial capacity to try or decide matters arising under section 4, article 9 of the Constitution. (*Light* v. *Skinner,* 159 N. Y. 167.) In the absence of authority actually conferred upon the superintendent of public instruc-

tion by law, he cannot by implication exercise powers which in effect give him the right to annul a valid contract and deprive the parties of the benefit of it, and do this by mere arbitrary action exempt from review in any court. (*Ringlander* v. *Star Co.*, 98 App. Div. 105.) The facts before this court will not sustain the conclusion that the wearing of the apparel worn by these teachers constitutes the teaching of a denominational tenet or doctrine within the prohibition of the Constitution. (*Newell* v. *People*, 7 N. Y. 9 ; *People* v. *Rathbone*, 145 N. Y. 434 ; *Hysong* v. *School Board*, 164 Penn. St. 629.)

*Fletcher C. Peck* for Patrick Hendrick as trustee, respondent. The superintendent of public instruction had the power to make the decision and order in question, and the plaintiff and her assignor were bound by the directions and conditions contained in said order. (*People ex rel. Bowers* v. *Allen*, 19 Misc. Rep. 464 ; *People ex rel. Light* v. *Skinner*, 159 N. Y. 167 ; *People ex rel. Underhill* v. *Skinner*, 74 App. Div. 58 ; *People ex rel. Yale* v. *Eckler*, 19 Hun, 609 ; *People ex rel. Clingan* v. *Draper*, 63 Hun, 389.) When the plaintiff and her assignor made these contracts in question they impliedly agreed as teachers to observe the orders and regulations which had been made by the superintendent of public instruction or which he might thereafter make, controlling the management and discipline of the public schools. (*Jemison* v. *C. S. Bank*, 122 N. Y. 135.)

*Walter H. Knapp* and *Albert H. Stearns* for Charles D. Miner et al., respondents. The decisions of the superintendent of public instruction that no teacher shall wear the distinctive and distinguishing dress or garb denoting membership in a religious order in public schools while teaching are a bar to the plaintiff's recovery. (*Rockefeller* v. *Taylor*, 69 App. Div. 185 ; Smith Modern Law of Municipalities, § 252 ; *McDonald* v. *Mayor*, 68 N. Y. 24.) The superintendent of public instruction had jurisdiction and authority to make the

decisions. (*People* v. *Schuyler*, 4 N. Y. 173 ; *People* v. *Allen*, 19 Misc. Rep. 464 ; *Clark* v. *Tunnicliffe*, 38 N. Y. 58 ; *Ex parte Bennett*, 3 Den. 177 ; *People ex rel. Clingan* v. *Draper*, 63 Hun, 389.) The decision of the superintendent of public instruction is final and conclusive and is binding upon this court. (*People* v. *Allen*, 19 Misc. Rep. 464 ; *Clark* v. *Tunnicliffe*, 38 N. Y. 58; *Ex parte Bennett*, 3 Den. 172 ; *People ex rel. Clingan* v. *Draper*, 63 Hun, 389 ; *Hutchinson* v. *Skinner*, 21 Misc. Rep. 729 ; *Yale* v. *Eckler*, 19 Hun, 609 ; *Steinson* v. *Board of Education*, 49 App. Div. 148 ; *Parke* v. *Independent School District*, 65 Iowa, 209 ; *Wood* v. *Farmer*, 69 Iowa, 533 ; *Thompson* v. *Board of Education*, 57 N. J. L. 628.) The decision of the superintendent of public instruction was binding upon the plaintiff and her assignor, although not made in name of parties to the appeal. (*City of Buffalo* v. *N. Y., L. E. & W. R. R. Co.*, 152 N. Y. 276 ; *Kittenger* v. *B. T. Co.*, 160 N. Y. 377 ; *United States* v. *Ju Toy*, 198 U. S. 644.) The regulation contained in the decisions was a proper one for the superintendent of public instruction to make and is consistent with the school policy of this state. (*People* v. *Bd. of Education*, 13 Barb. 411.)

Willard Bartlett, J. The real question in this case is whether the plaintiff and the plaintiff's assignor lost their right to any further compensation under their contract of service as teachers, by reason of their refusal to comply with a regulation established by the state superintendent of public instruction which in effect prohibited teachers from wearing a distinctive religious garb while engaged in the work of teaching.

The order made by the superintendent on the subject was in form the decision of an appeal. The Consolidated School Law as then in force provided for certain appeals to the state superintendent of public instruction by any person conceiving himself aggrieved in consequence of any decision made by various officers, including a decision by the trustees of any district in paying any teacher. (Laws of 1894, chapter

556, title XIV, section 1.)    One Alfred K. Bates prosecuted an appeal under the statute to review the action of Patrick Hendrick as school trustee of school district No. 9, in the town of Lima, in employing the plaintiff and Elizabeth E. Dowd as teachers, and allowing them to teach while wearing the distinctive dress of the Roman Catholic religious order known as the Sisterhood of St. Joseph, and it was upon this appeal that the superintendent promulgated the order prohibiting teachers from wearing the costume in question while engaged in the actual work of teaching.    Neither the plaintiff nor Elizabeth E. Dowd was a party to the proceedings thus brought before the superintendent, nor does it appear that they had any knowledge of it while it was pending.    It is plain, therefore, that it could have had no effect upon their rights considered as a judicial decision or prior adjudication. It seems to me, however, that it may be and should be viewed in another light, and if thus regarded, that it constituted a rule of conduct which the plaintiff and her fellow-teacher were bound to obey.    Although a decision in form, it was in fact a regulation in regard to the management of the common schools which the superintendent had the right to establish, provided only that it was reasonable in its character and not in conflict with the laws of the state or public policy.

While it is true that there is no express grant of authority to the state superintendent of public instruction (now the commissioner of education under the Unification Act, chapter 40 of the Laws of 1904) in the Consolidated School Law to establish regulations as to the management of the common schools, the existence of a general power of supervision on his part over such schools is clearly implied in many parts of the statute.

Among other things, he was required, so far as he could consistently with his other duties, to visit such of the common schools as he saw fit, and inquire into their course of instruction, management and discipline, and advise and encourage the pupils, teachers and officers thereof (Consolidated School Law, Laws of 1894, chapter 556, title 1, section 8).

The statute further prescribed that he should submit to the legislature an annual report containing among other things " a statement of the condition of the common schools of the state, and of all other schools and institutions *under his supervision*, and subject to his visitation as superintendent." (Idem, title 1, section 9, subdivision 1.)

It also gave him the power to remove any school commissioner or other school officer whenever it should be proved to his satisfaction that any such school commissioner had been guilty of any willful violation or neglect of duty under the statute or of " willfully disobeying any decision, order or *regulation* " of the superintendent.   (Idem, title 1, section 13.)

The authority to remove an officer for the willful disobedience of a regulation of the superintendent necessarily implies a power on the part of the superintendent to make regulations ; and as has already been suggested, if the superintendent possessed the power to establish regulations in regard to the management of the common schools, the courts will not pronounce such regulations invalid unless they are unlawful or unreasonable.   In arriving at a determination as to its validity a regulation in reference to the management of the common schools established by an officer under statutory authority is to be tested by rules similar to those which would apply in the case of a municipal ordinance, as to which the rule is that " ordinances passed in virtue of the implied power must be reasonable, consonant with the general powers and purposes of the corporation, and not inconsistent with the laws or policy of the state." (1 Dillon's Municipal Corporations [4th edition], section 319.)   The rule which seems to be applicable here was enunciated and applied by the Supreme Court of Illinois in the case of *Rulison* v. *Post* (79 Ill. 567), where the statutory duties of school directors were under consideration, and it was said : " In the performance of their duty in carrying the law into effect, the directors may prescribe proper rules and regulations for the government of the schools of their district, and enforce them.   They may, no doubt, classify the scholars, regulate their studies and their

deportment, the hours to be taught, besides the performance of other duties necessary to promote the success and secure the well-being of such schools.   But all such rules and regulations must be reasonable, and calculated to promote the objects of the law — the conferring of such an · education upon all, free of charge."   Another case involving a similar question is *Trustees of Schools* v. *People* (87 Ill. 303), where it was held that a regulation by school trustees excluding a pupil from a high school because his father did not wish him to study grammar therein was arbitrary and unreasonable and could not be enforced.

We are thus brought to the question whether in this state a regulation is to be deemed unreasonable which prohibits teachers in the common schools from wearing a distinctively religious garb while engaged in the work of teaching.   In my opinion it cannot justly be so regarded.   " Neither the State," says the Constitution, " nor any subdivision thereof, shall use its property or credit or any public money, or authorize or permit either to be used, directly or indirectly, in aid or maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught."   (Constitution, art. IX, section 4.)   Here we have the plainest possible declaration of the public policy of the state as opposed to the prevalence of sectarian influences in the public schools.   The regulation established by the state superintendent of public instruction through the agency of his order in the Bates appeal is in accord with the public policy thus evidenced by the fundamental law.   There can be little doubt that the effect of the costume worn by these Sisters of St. Joseph at all times in the presence of their pupils would be to inspire respect if not sympathy for the religious denomination to which they so manifestly belong.   To this extent the influence was sectarian, even if it did not amount to the teaching of denominational doctrine.   A different view was taken by the Supreme Court of Pennsylvania in the case of *Hysong*

v. *School District* (164 Pa. St. 629, 654) where it was held that school districts might employ as teachers sisters of a religious order of the Roman Catholic Church, and permit them while teaching to wear the garb of their order provided no religious sectarian instruction should be given, nor any religious sectarian exercises engaged in. There was a dissenting opinion in that case, however, strongly reasoned in support of the conclusion that a school conducted similarly to that in the case at bar was in effect dominated by sectarian influence. The teachers, said Mr. Justice WILLIAMS in this dissenting opinion, " come into the schools not as common school teachers or as civilians, but as the representatives of a particular order in a particular church whose lives have been dedicated to religious work under the direction of that church. Now the point of the objection is not that their religion disqualifies them. It does not. Nor is it thought that church membership disqualifies them. It does not. It is not that holding an ecclesiastical office or position disqualifies, for it does not. It is the introduction into the schools as teachers of persons who are by their striking and distinctive ecclesiastical robes necessarily and constantly asserting their membership in a particular church, and in a religious order within that church, and the subjection of their lives to the direction and control of its officers."

As to the reasonableness of the regulation prohibiting the use of a distinctive religious garb by teachers in the common schools, some other considerations may be mentioned. It must be conceded that some control over the habiliments of teachers is essential to the proper conduct of such schools. Thus, grotesque vagaries in costume could not be permitted without being destructive of good order and discipline. So, also, it would be manifestly proper to prohibit the wearing of badges calculated on particular occasions to constitute cause of offense to a considerable number of pupils, as, for example, the display of orange ribbons in a public school in a Roman Catholic community on the 12th of July. It is suggested in the brief of the learned counsel for the appellant that if the

state superintendent could order these teachers to refrain from wearing their distinctive religious costumes he could just as lawfully direct them to don a dress of any other pattern or to compel a teacher to remove a gown because it was too plain or too gay, or that he might order the principal to cut off his beard or color his moustache. The obvious answer to these suggestions and others of a similar character is that no regulation would be valid which was manifestly unreasonable, because it would then be unauthorized by law.

The views which have already been expressed substantially dispose of all the points argued in behalf of the appellant as well as those suggested in the dissenting opinion below except the proposition that the state superintendent had no right to annul a valid contract between a teacher and the school district by which she was employed. The proposition is correct, but it has no application in the present case, because a contract between the trustees and the teacher of a common school is, by implication, subject to the power of the superintendent to make reasonable regulations as to the management of the school. This being the case, the superintendent does not annul a valid contract by insisting that such reasonable regulations shall be observed, for by entering into the contract the teacher assumes the implied obligation to obey such regulations.

It follows that the judgment appealed from should be affirmed, with costs. In reaching this result, however, I do not wish to be understood as acquiescing in that part of the opinion below in which it is asserted that " these sisters should never be permitted to teach in our public schools." There is no reason either in morals or in law why they or any other qualified persons should not be allowed thus to teach, whatever may be their religious convictions, provided that they do not by their acts as teachers promote any denominational doctrine or tenet.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, VANN and CHASE, JJ., concur.

Judgment affirmed.