# Commonwealth, Appellant, v. Herr.

*Constitutional law—Title of act—Garb of teachers—Act of June 27, 1895, P. L. 395—Religious worship.*

1. The Act of June 27, 1895, P. L. 395, entitled, "An Act to prevent the wearing in the public schools of this Commonwealth, by any of the teachers thereof, of any dress, insignia, marks or emblems indicating the fact that such teacher is an adherent or member of any religious order, sect or denomination, and imposing a fine upon the board of directors of any public school permitting the same," is sufficient in title, and does not violate sec. 3, art. III, of the constitution of Pennsylvania.

2. The title of the act is sufficient to cover the provisions relating to the suspension and disqualifying of teachers who violate the act and to cover the provisions relating to the fining of individual directors, of the deprivation of the directors of their office or their disqualification for office.

3. The statement in the title that the fine is to be imposed on "the board of directors," whereas the penal provision contained in the body of the act is directed against the director or directors who offend, does not render the act unconstitutional.

4. The act does not violate the fifth and fourteenth amendments of the constitution of the United States, in that it subjects the individual school director to punishment for the acts of his associates as a body, when he may not be in any way responsible for them.

5. The act is not to be construed, so as to impose a penalty on a di-

rector who has done his duty. It is only directed against such directors as have failed to comply with the provisions of the act.

6. The act does not violate secs. 3 and 4 of art. I of the constitution of Pennsylvania relating to religious worship and belief. The provision in the act, "That no teacher in any public school of this commonwealth shall wear in said school or whilst engaged in the performance of his or her duty as such teacher any dress, mark, emblem or insignia indicating the fact that such teacher is a member or adherent of any religious order, sect or denomination," does not disqualify any person from employment as a teacher, "on account of his religious sentiments." It is directed against acts, not beliefs, and only against acts of the teachers whilst engaged in the performance of his or her duties as such teacher.

7. The religious freedom and the rights of conscience guaranteed by the constitution, do not necessarily and always stand in the way of the enforcement of laws commanding or prohibiting the commission of the acts even by those who conscientiously believe it to be their religious or moral duty to do or to refrain from doing.

8. The right of the individual to clothe himself in whatever garb his taste, his inclination, the tenets of his sect, or even his religious sentiments may dictate is no more absolute than his right to give utterance to his sentiments, religious or otherwise. In neither case can it be said that a statute cannot restrain him from exercising these rights whenever, wherever and in whatever manner he conscientiously believes it to be his moral or religious duty to do so.

Argued Nov. 13, 1908. Appeal, No. 188, Oct. T., 1908, by plaintiff, from order of Q. S. Lancaster Co., April T., 1908, No. 21, sustaining demurrer to adjudication in case of Commonwealth v. Amos R. Herr et al., the Board of School Directors of the School District of Mount Joy Township. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Indictment against school directors for failure to enforce the Act of June 27, 1895, P. L. 395, relating to the garb of school teachers. Before LANDIS, P. J.

Demurrer to indictment.

The case turned on the constitutionality of the act of June 27, 1895.

The court entered judgment for the defendants on the demurrer.

*Error assigned* was the order of the court.

*A. M. DeHaven* and *John E. Malone*, with them *J. W. Johnson*, district attorney, and *S. V. Hosterman*, assistant district attorney, for appellant.—The act does not violate art. III, sec. 3, in that its subject is not clearly expressed in its title: Blood v. Mercelliott, 53 Pa. 391; Com. v. Clymer, 217 Pa. 302.

The real test is: Are all the matters treated of in the act cognate to the general subject expressed in the title, however diverse they may seem to.be as between themselves: Kelley v. Mayberry Township, 154 Pa. 440; Com. v. Charity Hospital, 198 Pa. 270; Com. v. Railway Co., 219 Pa. 11; Com. v. Jones, 4 Pa. Superior Ct. 362; Sugar Notch Borough, 192 Pa. 349.

The act does not violate the fifth amendment to the constitution of the United States in that it deprives a citizen of his property by fine, and of his office by forfeiture, by making him liable individually for the acts of his associates.

The act does not violate art. I, sec. 2, of the constitution of Pennsylvania in that it deprives men of the inherent and indefeasible right to acquire and possess property, and pursue their own happiness: Com. v. Vrooman, 164 Pa. 306; Swing v. Munson, 191 Pa. 582; Sweeny v. Hunter, 145 Pa. 363; Com. v. Beatty, 15 Pa. Superior Ct. 5; Com. v. Moir, 199 Pa. 534.

The act does not violate art. I, sec. 3, of the constitution of Pennsylvania, which declares that, "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. . . . No human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given, by law, to any religious establishments or modes of worship:" Com. v. Lesher, 17 S. & R. 155; Specht v. Com., 8 Pa. 312; Reynolds v. U. S., 98 U. S. 145; Davis v. Beason, 133 U. S. 333 (10 Sup. Ct. Repr. 299); Latter Day Saints v. U. S., 136 U. S. 1 (10 Sup. Ct. Repr. 792).

The act does not violate art. I, sec. 4, of the constitution of Pennsylvania which declares that, "No person who acknowledges the being of a God and a future state of rewards and punishments, shall, on account of his religious sentiments be disqualified to hold any public office or place of trust or profit under this commonwealth:" Hysong v. School District, 164

Pa. 629; O'Connor v. Hendrick, 184 N. Y. 421 (77 N. E. Repr. 612).

*W. U. Hensel,* for appellees.—The title of the act does not give due notice of its provisions: Dorsey's App., 72 Pa. 192; Union Passenger Ry. Co.'s App., 81* Pa. 91; Com. v. Kebort, 212 Pa. 289; White on Constitution of Pennsylvania, p. 226; Com. v. Hazen, 207 Pa. 52; Hatfield v. Com., 120 Pa. 395; Rogers v. Manufacturers' Improvement Co., 109 Pa. 109; In re Road in Borough of Phœnixville, 109 Pa. 44; Com. v. Moorhead, 7 Pa. C. C. Rep. 513; Quinn v. Cumberland County, 162 Pa. 55; Barnes v. Philadelphia, etc., R. R. Co., 27 Pa. Superior Ct. 84; Com. v. Penn Forest Brook Trout Co., 11 Pa. Dist. Rep. 349; Schall v. Norristown, 6 Leg. Gaz. 157; Beckert v. Allegheny City, 85 Pa. 191; Cassel's Appeal, 8 Lanc. L. R. 260; Com. v. Farley, 6 Pa. C. C. Rep. 433; Com. v. Frantz, 135 Pa. 389.

The act is unconstitutional and void because it proposes to punish one person for the omission of another—to punish the individual for the offenses of a corporate body, a municipal unit: Huber v. Reily, 53 Pa. 112; Wallen v. Lake, 2 Northampton, 69; Butler Twp. School District's Case, 158 Pa. 159.

It violates the state constitutional provisions against liberty of conscience.

OPINION BY RICE, P. J., July 14, 1909:

Taking up the objections urged against the validity of the Act of June 27, 1895, P. L. 395, in the order in which they are set forth in the brief of the appellees' counsel, the first question to be considered is whether the act violates sec. 3, art. III of the constitution which declares that no bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title. The title reads: "An act to prevent the wearing in the public schools of this commonwealth, by any of the teachers thereof, of any dress, insignia, marks or emblems indicating the fact that such teacher is an adherent or member of any religious order, sect or denomination, and imposing a fine upon the board of directors of any public school permitting the same." As the subject clearly ex-

pressed in the title is the prevention of certain acts by common school teachers, anyone interested in the subject would, upon reading the title, naturally be led to presume that the bill contained provisions germane to the subject and calculated to effect the object to be attained. He also would naturally be led to presume that included in them were provisions calculated not only to deter school directors from permitting teachers to transgress the law but also to deter teachers themselves from transgressing it. The title need not embody all the distinct provisions of the bill in detail, nor, as has been said repeatedly, serve as an index or digest of its contents; it is sufficient if the title fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into what is contained in the body of the bill. "A recent admonition from the Supreme Court in Com. v. Rapid Transit Street Ry. Co., 219 Pa. 11, indicates the true spirit of the constitutional requirement and suggests that brevity which does not mislead should be aimed at in the construction of the titles of statutes. Such a title, though general, will cover all details and collateral matters naturally and properly incident to the subject: Stegmaier v. Jones, 203 Pa. 47:" Com. v. Darmska, 35 Pa. Superior Ct. 580; Weiss v. Swift & Co., 36 Pa Superior Ct. 376. Viewing this title in the light of these well-settled principles, it cannot be declared insufficient upon the ground that it does not expressly mention the provisions relating to the suspension and disqualifying of teachers who violate the act.

The objection that the title is misleading, and therefore defective, because no mention is made therein of the purpose to fine individual directors, or to deprive them of their offices or to render them ineligible to appointment or election if they violate the law, is next to be considered. It is to be noticed that the provisions of the act relating to the deprivation of a school director of his office, and to his ineligibility to appointment or election do not come into operation until after a second conviction. They are not necessarily involved in the present case, and their validity need not be discussed. Even if they be invalid— a point we do not decide—the invalidity of the provision subjecting the offending directors to indictment and fine would by no means follow. The other punitive provisions are separable

therefrom and may be rejected—we do not intimate that they must be—without drawing with them the provision upon which this prosecution depends: Com. v. Caulfield, 27 Pa. Superior Ct. 279; Com. v. Martin, 35 Pa. Superior Ct. 241, at p. 248, and cases there cited; Com. v. Dougherty, ante, p. 338.

But, it is claimed that the title, even as to the imposition of a fine, is misleading, because, as argued by appellees' counsel, it indicates that the fine is to be imposed on "the board of directors," whereas the penal provision contained in the body of the act is directed against the director or directors who offend. If in framing the title the intention had been to indicate that the fine was to be imposed upon a corporate or quasi corporate body, as distinguished from the individuals who compose it or the officers who direct its affairs, it is reasonable to suppose that some other form of expression would have been used than "board of school directors." Under our common school system a "board" of school directors is not such a legal entity as can be made to respond to civil or criminal process. As used in this connection, it must be regarded as a mere name or form of expression to indicate a number of persons appointed or elected to sit in council for the management or direction of the affairs of a school district, the latter and not the board being the corporate entity. It is impossible to conceive of the imposition of a fine upon a board of school directors apart from the directors personally. And, surely, no one reading this title could reasonably infer therefrom that the intention was to do the vain thing of imposing a fine which could not be enforced against any person, natural or artificial. On the contrary, the plain and natural inference to be drawn from the words of the title would be that the body of the bill contained a penal provision calculated to deter the members of the governing body from permitting the forbidden act. This seems to be an appropriate occasion for quoting again the apt language of Allegheny County Home's App., 77 Pa. 77: "It will not do, therefore, to impale the legislation of the state upon the sharp points of criticism, but we must give each title as it comes before us, a reasonable interpretation, ut res magis valeat quam pereat." Without further elaboration, we conclude, that the title is sufficiently compre-

hensive as well as sufficiently precise and clear to sustain the provisions of the act involved in this case.

The next objection urged against the act is that it violates the fifth and fourteenth amendments of the constitution of the United States, in that it subjects the individual school director to punishment for the acts of his associates as a body when he may not be in any way responsible for them. It is obvious, we think, upon a mere reading of this objection in connection with the clause of the statute to which it relates that the objection is based on an erroneous interpretation of the clause. It is "the public school director failing to comply with the provisions of this act," who is made subject to indictment and fine. It would require a very strained and indeed wholly unwarranted interpretation of these words in a penal statute to hold that a director, who in good faith has done what he could officially to comply with the provisions of the act, but has been outvoted by his associates, has failed to comply with them. One of the elementary rules in the construction of statutes is to adopt such construction, if it be fairly possible, as will avoid a conclusion that would make it unconstitutional. The presumption always is that the legislature does not intend to violate the constitution, and this controls in doubtful cases. Besides this, the act furnishes very satisfactory evidence that the legislature did not intend to punish such a director as we have spoken of. It first declares that, "it shall be the duty of said school board to permanently suspend such teacher," etc., and then that, "any public school director failing to comply with the provisions of this act shall be guilty of a misdemeanor," etc. The law does not confer the power, nor impose the duty, on a single director, to suspend a teacher. He must, however, do his duty as a member of the board and when he has done that, he has complied with the provisions of the law. This is evidently what the legislature meant, not that he must do that which he cannot do himself. If the legislature had intended the absurdity and injustice of punishing a director who has done his duty and exhausted the power the legislature gave him, it would not have used language which reasonably imports that each director is punishable by fine for his own dereliction only.

The remaining objections urged against the act are that it violates secs. 3 and 4 of art. I of our constitution which so far as material here read as follows:

Sec. 3. "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; . . . . no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preferences shall ever be given by law to any religious establishments or modes of worship."

Sec. 4. "No person who acknowledges the being of a God and a future state of rewards and punishments shall, on account of his religious sentiments, be disqualified to hold any office or place of trust or profit under this commonwealth."

The inhibition of the act is thus expressed: "That no teacher in any public school of this commonwealth shall wear in said school or whilst engaged in the performance of his or her duty as such teacher any dress, mark, emblem or insignia indicating the fact that such teacher is a member or adherent of any religious order, sect or denomination." A violation of the foregoing provision subjects the teacher to suspension from employment in the district for one year, and a second offense to permanent disqualification to teach in the district. If the question for our decision were whether the act prohibited by this legislation is contrary to the letter or the true intent and meaning of the sections of the constitution above quoted, or of the constitutional prohibition against the appropriation or use of public school money for the support of any sectarian school, it would be sufficient for us to say that it has been authoritatively and conclusively answered in the negative by the Supreme Court in Hysong v. Gallitzin Borough School Dist. et al., 164 Pa. 629. So also if the question for our decision were whether the legislation was necessary in order to carry into effect, in the administration of the public schools, these constitutional provisions, the answer would have to be in the negative. The question is not, what do these sections empower the legislature to do, but what limitations do they impose upon the general legislative power vested in the general assembly by sec. 1, art. II of the constitution. This question did not arise in the case cited,

and it is an obvious mistake to suppose that the legislation must fail because the effort to accomplish the same result through the courts was ineffectual. The legislature may exercise all the powers of a legislative character that are not prohibited to it by the state or federal constitutions: Com. v. McCloskey, 2 Rawle, 369. Nothing but a clear violation of the constitution, "a clear usurpation of powers prohibited" will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void: SHARSWOOD, J., in Penna. R. R. Co. v. Riblet, 66 Pa. 164. The right of the judiciary to declare a statute void and to arrest its execution is one which, in the opinion of all courts, is coupled with responsibility so grave that it is never to be exercised except in very clear cases. "The party who wishes to pronounce a law unconstitutional takes upon himself the burden of proving beyond all doubt that it is so:" BLACK, J., in Erie & Northeast R. R. Co. v. Casey, 26 Pa. 287; quoted with approval by STERRETT, J., in Powell v. Com., 114 Pa. 265. "Nor are the motives of the legislature, real or supposed, in passing an act open to judicial inquiry or consideration. The legislature is the lawmaking department of the government, and its acts in that capacity are entitled to respect and obedience until clearly shown to be in violation of the only superior power, the constitution:" MITCHELL, J., in Com. v. Moir, 199 Pa. 534. "Where the power which is exercised is legislative in its character, the courts can enforce only those limitations which the constitution imposes; not those implied restrictions which, resting in theory only, the people have been satisfied to leave to the judgment, patriotism and sense of justice of their representatives:" Cooley's Const. Lim. (7th ed., 1903) 184. Again the learned author says, and this is quoted with approval in Com. v. Moir, 199 Pa. 534: "The rule of law upon this subject appears to be, that except where the constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not in any particular case. The courts are not the guardians of the rights of the people of the state, except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection

against unwise or oppressive legislation, within constitutional bounds, is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil; but courts cannot assume their rights. The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon -points of right, reason and expediency with the lawmaking power. Any legislative act which does not encroach upon the powers apportioned to the other departments of the government, being prima facie valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the constitution, and the case shown to come within them:" Cooley's Const..Lim. (7th ed.) 236. We have been led to bring prominently into view these generally accepted principles that govern the courts in the determination of such a question as we have before us, because we deem it the most appropriate mode of answering some of the arguments, which, it seems to us, are pertinent only to the question of the necessity for, and the expediency and wisdom of, the legislation. These are legislative, not judicial, questions, and they will not be discussed here.

We cannot assent to the proposition that the intent or the effect of the legislation is to disqualify any person from employment as a teacher "on account of his religious sentiments." It is directed against acts, not beliefs, and only against acts of the teacher whilst engaged in the performance of his or her duties as such teacher. It is true the acts prohibited are those which may indicate, and indeed may be dictated by, the religious sentiments of the teacher. Therefore we are led to the broader inquiry whether this constitutes an infringement of the "natural and indefeasible right of all men to worship Almighty God according to the dictates of their own consciences," or contravenes the accompanying declaration that "no human authority can, in any case whatever, control or interfere with the rights of conscience." No man's religious belief may be interfered with by law. As was said by Justice WILLIAMS in Hysong v. Gallitzin Boro. School District, 164 Pa. 629, the rights of conscience are no less sacred than the rights of property; test oaths and religious disqualifications belong to a period further back

than the memory of the present generation can reach, and it is to be hoped they may never be restored. But broad as are these declarations of our constitution, and sacred as are the religious freedom and the rights of conscience they secure, yet it must be apparent to any person upon reflection, and has been repeatedly declared by the highest judicial authority, that they do not mean, unqualifiedly, that it is beyond the power of the legislature to enact any law which will restrain individuals from doing that which, if it were not for the law, their consciences would teach them to be their moral or religious duty. Indeed it is impossible to see how civil government could exist, if the dictates of the individual conscience were in every instance where they come in conflict with the law of the land the paramount rule of action. Speaking of the act of congress which forbids plural marriages in territories and places under the exclusive dominion of the United States, Chief Justice WAITE said: "Congress cannot pass a law for the government of the territories which shall prohibit the free exercise of religion. The first amendment to the constitution expressly forbids such legislation. Religious freedom is guaranteed everywhere throughout the United States so far as congressional interference is concerned. The question to be determined is whether the law now under consideration comes within this prohibition." Then, for the purpose of ascertaining the meaning of the terms religious freedom, he reviewed the history of the times in which the constitutional provision relating thereto was adopted and in the course of his reasoning in support of the conclusion that it was not intended to prohibit legislation forbidding polygamy, even by those adherents of a sect who believed it to be their religious duty to practice it, he used the following language which is pertinent to the discussion of the question before us: "Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices. . . . So here, as a law of the organization of society under the exclusive dominion of the United States, it is provided that plural marriages shall not be allowed. Can a man excuse his practice to the contrary because of his religious belief? To permit this would be to make the professed doctrines of religious belief su-

perior to the law of the land, and in effect to permit every citizen to become a law unto himself. Government could exist only in name under such circumstances." Many other illustrations may be found in decided cases of the general principle that the religious freedom and the rights of conscience guaranteed by the constitution do not necessarily and always stand in the way of the enforcement of laws commanding or prohibiting the commission of acts even by those who conscientiously believe it to be their religious or moral duty to do or refrain from doing them. For example, not to go outside of Pennsylvania, a Jew who refused to be sworn in the trial of a case on Saturday because it was his Sabbath was fined: Stansbury v. Marks, 2 Dall. 213. The conscientious scruples of a Jew to appear in court and attend to the trial of his case on the same day were held to be no ground for the continuance of his cause: Philips v. Gratz, 2 P. & W. 412. The act prohibiting all worldly employment upon the first day of the week has been held not to be in contravention of the constitutional rights under consideration, even where applied to persons whose religious belief leads them to observe another day of the week as their Sabbath: Com. v. Wolf, 3 S. & R. 48; Specht v. Com., 8 Pa. 312. The same was held to be true as to persons who conscientiously believe it to be their religious duty to labor the first six days of the week and to keep the seventh day as the Sabbath: Waldo v. Com., 9 W. N. C. 200. Adherents of a religious organization who deem it their duty by divine command to go into the streets and there preach the gospel and who as a regular part of their service use the drum, are not exempted by the constitution from the operation of a city ordinance which prohibits the use of a drum or other musical instrument on the street without permit from the mayor: Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355. The case of Com. v. Lesher, 17 S. & R. 155, is not directly pertinent to the question before us, but the remarks of Chief Justice GIBSON which though made in a dissenting opinion were approved in Specht v. Com., 8 Pa. 312, and have not been questioned or qualified in any later case that has come to our notice, seem to be very pertinent. He said: "It is declared in the constitution that no human authority can, in any case, control or interfere with

the rights of conscience. But what are those rights? Simply a right to worship the Supreme Being according to the dictates of the heart, to adopt any creed or hold any opinion whatever on the subject of religion; and to do, or forbear to do, any act, for conscience sake, the doing or forbearing of which is not prejudicial to the common weal." Then after speaking of the views of Mr. Jefferson upon the subject he proceeded: "He denies the right of society to interfere only where society is not a party in interest, the question, with its consequences, being between the man and his Creator; but as far as the interests of society are involved, its right to interfere on principles of self-preservation is not disputed. And this right is insolvable into the most absolute necessity; for, were the laws dispensed with, wherever they happened to be in collision with some supposed religious obligation, government would be perpetually falling short of the exigence. There are few things, however simple, that stand indifferent in the view of all the sects into which the Christian world is divided." The right of the individual to clothe himself in whatever garb his taste, his inclination, the tenets of his sect, or even his religious sentiments may dictate is no more absolute than his right to give utterance to his sentiments religious or otherwise. In neither case can it be said that a statute cannot restrain him from exercising these rights whenever, wherever and in whatever manner he conscientiously believes it to be his moral or religious duty to do so. That the right to wear a particular garb is not as absolute and as free from legislative control as that was expressly conceded by the Supreme Court in Hysong v. Gallitzin Boro. School Dist., 164 Pa. 629, in the following terms: "The legislature may, by statute, enact that all teachers shall wear in the schoolroom a particular style of dress and that none other shall be worn, and thereby secure the same uniformity of outward appearance as we now see in city police, railroad trainmen, and nurses of some of our large hospitals." It is urged that this part of the opinion is obiter dictum. It is true the precise question whether the legislature could enact such a law was not before the court, and it may be conceded that for that reason the utterance is not a binding authority. Nevertheless it was pertinent in the discussion of the

question then before the court, and was evidently made upon due deliberation. Besides that, the obiter, if so it may be regarded, comes from so high a source that it is entitled to great respect from us. Moreover, the proposition is so well supported by sound principle, that we believe it to be unassailable. But any public school teacher who is restrained by the act of 1895 from doing that in the schoolroom which his conscience or his religious sentiments dictate, would just as plainly and to the same extent be restrained by such a statute as is described in the case cited. Another case that may be appropriately referred to in this connection is O'Connor v. Hendrick, 184 N. Y. 421. It was there held in a well-considered opinion that a regulation established by the state superintendent of public instruction, who had implied authority under the statute to establish regulations as to the management of the public schools, prohibiting teachers in public schools from wearing a distinctively religious garb while engaged in the work of teaching therein was a reasonable and valid exercise of the power vested in him. This is the only other decision that has been brought to our notice which deals with the precise question of the validity of a rule or statute of that nature.

The system of common school education in this commonwealth is the creature of the state, and its perpetuity and freedom from sectarian control are guaranteed by express constitutional provisions. Subject to these, the power to support and maintain an efficient system of public schools, wherein all the children of the commonwealth above the age of six years may be educated, is vested in the legislature. This carries with it the authority to determine what shall be the qualifications of the teachers, but in prescribing them the legislature may not make religious belief or church affiliation a test. Nevertheless, the power of the legislature to make reasonable regulations for the government of their conduct whilst engaged in the performance of their duties must be conceded. Primarily it is the province of the legislature to determine what regulations will promote the efficiency of the system and tend to the accomplishment of the object for which it was established. It is only where such regulations are clearly shown to be in violation of the funda-

mental law that the courts, even though entertaining a different opinion from that of the legislature as to the necessity for or the wisdom or expediency of adopting them, may annul them. As shown by the preamble of the act under consideration, the legislature deemed it "important that all appearances of sectarianism should be avoided in the administration of the public schools of this commonwealth." This was the ostensible object of the legislation, and we can discover no substantial ground for concluding that it was not the sole object which the legislature had in contemplation. Nor are we able to conclude either that the object was beyond the scope of legislative power, or that the regulation adopted has no just and proper relation to that object.

The judgment is reversed, the demurrer overruled with leave to the defendant to plead the general issue and the record is remitted with a procedendo.