## CITY OF NEW HAVEN
### vs.
## TOWN OF TORRINGTON

Superior Court          New Haven County          File No. 63777

MEMORANDUM FILED MAY 6, 1944.

*A. Frederick Mignone,* Assistant Corporation Counsel, New Haven, for the Plaintiff.

*Harry Ossen,* of Torrington, for the Defendant.

O'SULLIVAN, J. This is an action to obtain reimbursement for the expense to which the plaintiff was put in educating a number of children in a grammar school maintained by the City of New Haven.

In 1879, the board of education of the city made arrangements with those in charge of St. Francis Orphan Asylum, a Roman Catholic charitable institution, for the use of certain rooms in one of its buildings for the purpose of establishing and conducting therein a grammar school. It was originally called St. Francis Orphan Asylum School but in 1934 the name was officially changed to Highland Heights School. Since its establishment, the conditions, circumstances and arrangements have remained substantially the same up to the present time. The space in the building other than that set apart for eight classrooms is devoted to the purposes of the orphanage. For example, it provides for a chapel and an office occupied by a Roman Catholic priest, the active head of the institution. The teaching staff of the school consists of two lay persons and eight nuns, one of whom is the principal. All of the staff are certified public school teachers and hold their positions through appointment by the board of education. They are

paid from the public treasury, their salaries being comparable to those of similar classification in the educational system of the city. The curriculum is prescribed by the board and is identical with that followed in all other grammar schools. The text-books, furnished by the board, are the same as those in use throughout the city. The nuns wear a religious habit, the distinctive garb of the order to which they belong.

The inmates of the orphanage are of the Roman Catholic faith. While all of them attend the school, it is not maintained exclusively for them but is, and always has been, open to any child living in the neighborhood. Occasionally some of these children are enrolled as pupils.

The morning session begins, as in the case of all other city grammar schools, at 8:45 a.m. An hour earlier the inmates of the orphanage proceed to the chapel where they attend Mass, a matter, in time, of perhaps a half-hour. During the entire school session no religious instruction of any nature is permitted by the board or given by the teachers, although when school ends in the afternoon, the classrooms are used by the nuns for that purpose but solely for the benefit of the inmates.

Among the children at the orphanage between 1933 and 1937 were several who had been committed by the juvenile side of the City Court of Torrington to the Litchfield County Temporary Home and from there had been sent to St. Francis Orphan Asylum. These children attended Highland Heights School for varying periods of time between the dates just mentioned. The plaintiff bases its right to recover the cost of their education on subdivision (e) of section 334c of the 1935 Cumulative Supplement to the General Statutes, reciting that "the school expense of any child placed out from a county home shall be paid by the town from which he was committed."

In opposition to the claim of liability, the defendant first asserts that Highland Heights School is a parochial and not a public school. From this premise it reasons that even though the City of New Haven may have submitted to expense in operating this school, its policy was unlawful, and hence the defendant cannot be compelled to withdraw from its treasury any funds to reimburse New Haven for the latter's improper expenditures.

The facts, however, do not support the defendant's position. The school has all the indicia of a public school and lacks all the essential characteristics of a sectarian institution. For example, it has always been open to the public. It is under the supervision, direction and control of a public board charged, under the laws of the State, with administration and management of public schools. The courses of study are prescribed by public officials whose duty, under the law, is to do that very thing. Only such persons are appointed as teachers who possess certificates issued by State authority, permitting them to teach in any public school, and all of them are constantly as much under the direction of the superintendent of schools as are other teachers in the city system. Furthermore, there is no religious instruction taught during any part of the school session.

The habit of the nuns does not constitute sectarian teaching. *Gerhardt vs. Heid,* 66 N.D. 444, 267 N.W. 127. That their apparel discloses their Catholicism is, of course, true. Indeed, it broadcasts the fact that the wearers embrace a particular religious belief. But pupils usually know the religious faith of their teachers whether they are clothed in the somber garb of a nun or in the smartest frock on the avenue. The cut of a man's coat or the color of a woman's gown does not constitute sectarian teaching. "This is the first time", says the Pennsylvania Supreme Court, that "[we have] been asked ,to decide, as matter of law, that it is sectarian teaching for a devout woman to appear in a schoolroom in a dress peculiar to a religious organization of a christian church. We decline to do so; the law does not so say." *Hysong vs. School District,* 164 Pa. 629, 658, 30 Atl. 482, 484. To like effect are *Gerhardt vs. Heid, supra,* and *State ex rel. Johnson vs. Boyd,* 217 Ind. 348, 28 N.E. (2d) 256. In the absence of any statute or regulation of the board preventing a teacher appearing in religious habit, my conclusion must be in accord with the cases just cited. *O'Connor vs. Henrick,* 184 N.Y. 421, 77 N.E. 612; *Commonwealth vs. Herr,* 229 Pa. 132, 78 Atl. 68.

From the foregoing I hold that Highland Heights School has been and is a public grammar school. And this brings us to the second claim of the defendant, namely, that the statute on which the plaintiff counts requires proof that the children in question had a settlement in Torrington.

During the course of the trial, evidence, in the form of written reports of the State Welfare Department, was offered

and admitted, over objection, for the purpose of establishing settlement. It now develops that this evidence is immaterial because, as I interpret the pertinent part of the statute, liability is not predicated on settlement.

The statute (§334c) has five subdivisions and is framed to meet various situations where one town is required to educate certain designated classes of children whose schooling has been forced on it. Subdivision (a) provides for those contingencies arising when a child having a legal residence in one town receives his education in the school system of another. An illustration would occur where, let us say, a child residing in the Town of Orange attends the New Haven High School because there is no such school in Orange. Subdivision (b) sets up the mechanics by which the claim for reimbursement is to be made. Subdivision (c) requires the posting of a bond by a person to guaranty the cost of educating a child whose legal residence is in another state. Subdivision (d) precludes a charge against another town when a child enters an "educating" town whenever the purpose of those having the legal custody of the child is that he is to reside in his new home permanently. Subdivision (e), as already pointed out, recites that "the school expense of any child placed out from a county home shall be paid by the town from which he was committed." The defendant overlooks the source of the plaintiff's right of action by assuming that it springs from subdivision (a). The fact is that the final subdivision creates the right and subdivision (a) is wholly inapplicable to the case.

The test of liability under (a) is the child's settlement, but (e) adopts a different one. The latter imposes liability on the town from which the child was committed to the county home, regardless of whether it was likewise the place of his settlement. If such a town must shoulder the necessity of reimbursing the "educating" town, it, in turn, probably can recover from the town of the child's settlement, but with this question we have no instant concern.

In as much as the children were committed to the county home from the Town of Torrington where they lived and from the county home were placed out in St. Francis Orphan Asylum — a not uncommon practice — the defendant must reimburse the plaintiff unless there is any merit to the final claim that the statute of limitations bars recovery.

The plaintiff insists that the statute is not applicable in that it does not run against a municipal corporation in the exercise of a governmental function. However, it is unnecessary to pass upon this question because there is no statute that limits the plaintiff's right to seek reimbursement. Section 6005 of the General Statutes, Revision of 1930, on which the defendant relies, provides that no action for an account, or for a debt due by book to balance book accounts, or on any simple or implied contract, or upon any contract in writing not under seal, except promissory notes not negotiable, shall be brought but within six years next after the right of action shall accrue.

This statute originally passed in 1812 has remained in substantially the same form until today. As first enacted, the statute included only those common law actions which arose out of contract. Thus, account was founded on privity of contract (1 *Swift* 581). This was true of all other enumerated actions. The passage of the Practice Act has not altered the construction to be given the statute. "The same facts will entitle one to the same redress as before, and to no other redress." *Aetna Life Ins. Co. vs. Richmond,* 107 Conn. 117, 121; *LeWitt vs. Park Ecclesiastical Society,* 103 *id.* 285, 299. Section 6005 has no application to any situations not involving a contract, express or implied.

The plaintiff's right does not come from any contractual relationship with the defendant. Its right is derived from the legislative will. The city would have no claim for reimbursement were it not that the Assembly created the statutory right found in section 334c. And whether from design or oversight, the Legislature failed to limit the time within which the right may be pressed. For this reason, the special defense is of no avail.

It follows that liability must be imposed on the defendant. The extent of the reimbursement is the cost of educating the children in question. The evidence discloses that the following items were paid by the city for the maintenance of Highland Heights School.

|  | 1933-34 | 1934-35 | 1935-36 | 1936-37 |
|---|---|---|---|---|
| Control | 665.45 | 665.00 | 665.00 | 665.00 |
| Supervision | 207.10 | 228.00 | 228.00 | 228.00 |
| Supplies | 310.65 | 285.00 | 285.00 | 285.00 |
| Books | 477.85 | 332.50 | 332.50 | 332.50 |
| Equipment | 351.50 | 357.20 | 340.10 | 330.60 |

Teachers ......... 20,550.00  19,000.00  19,150.00  19,250.00
Fuel ............  200.00     200.00     200.00     200.00

22,753.55  21,067.70  21,200.60  21,291.10

The first five items represent a five percent reduction from the figures given in evidence, on the ground that the witness stated he thought his figures too high. The per capita cost per pupil at the school was $61.49 for 1933-34, $56.03 for 1934-35, $59.21 for 1935-36, and $61.18 for 1936-37.

Fifteen children attended the school for the entire term in the years 1933-34, at a cost of $922.35; sixteen children in the years 1934-35, at a cost of $896.48; eleven children in the years 1935-36, at a cost of $651.31, and in addition thereto seven other children attended for a portion of the term, one for 101 days, one for 94 days, two for 79 days each, one for 64 days, one for 31 days and one for 24 days, at a cost of $155.29; seventeen children for the entire term in the years 1936-37, at a cost of $1,040.06, and in addition thereto there were two other children each of whom attended the school for 146 days at cost of $99.25. The entire amount for which the defendant is liable, exclusive of any interest, for which no claim was made, is $3,764.74, for which judgment may enter against the defendant.