513 A.2d 986

**Betty WIKOSKI**

v.

**Chester WIKOSKI, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 4, 1985.

Filed July 31, 1986.

Michael R. Lynn, Bloomsburg, for appellant.

John J. Hovan, Tunkhannock, for appellee.

Before BROSKY, POPOVICH and ROBERTS, JJ.

BROSKY, Judge:

This appeal is from a divorce decree. Appellant contends

that the Divorce Code provision allowing no-fault divorce [1] violates his freedom of religion under the Pennsylvania Constitution.[2] We disagree, and accordingly, affirm.

Appellant contends that the grant of a divorce infringes on his religious beliefs as a Roman Catholic, in that that faith opposes divorce. His devotion to his faith is quite apparent. Such an infringement, he argues, works a violation of his rights under Article I, Section 3 of the Pennsylvania Constitution. That Section states:

All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; No man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; No human authority can, in any case, whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship.

The provision at issue is that providing for freedom of "the rights of conscience."

There is no case on point in this Commonwealth. As a consequence, before turning to the cases interpreting our State Constitution, it will be useful to consider cases in other jurisdictions treating similar issues and the precise issue before us.[3]

Three United States Supreme Court cases are worth noting. First, in *Maynard v. Hill*, 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654 (1888), the high court held that marriage was a social relationship governed by the laws of the individual states under their police powers. Second, in *Sherbert v. Verner*, 374 U.S. 398, 403, 83 S.Ct. 1790, 1793, 10 L.Ed.2d

---

1. 23 Pa.C.S. § 201(d)(1)(ii).

2. Appellant also contends that there was insufficient evidence of the irretrievable breakdown of the marriage. Upon review, we find this issue to be without merit.

3. While these non-Pennsylvania cases involve, for the most part, the First Amendment of our federal constitution, our holding herein is made only with respect to our state constitution. See *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983).

965 (1963) the court reiterated the standard under which First Amendment infringements by state regulation are to be judged: "If, therefore, the decision ... is to withstand appellant's constitutional challenge, it must be ... because any incidental burden on the free exercise of appellant's religion may be justified by a 'compelling state interest in the regulation of a subject within the State's constitutional power to regulate....' *NAACP v. Button,* 371 U.S. 415 [, 83 S.Ct. 328, 9 L.Ed.2d 405] ..."

The third, and final, United States Supreme Court case examined here is the earliest of them, from 1878. *Reynolds v. United States,* 8 Otto 145, 98 U.S. 145, 25 L.Ed. 244 (1878), treated the question of whether freedom of religion made impermissible federal law prohibiting polygamy. A Mormon in the then territory of Utah was prosecuted under the federal law. Chief Justice Waite delivered the scholarly and eloquent opinion of the Court. Some brief exerpts from *Reynolds* are well worth quoting.

Marriage, while from its very nature a sacred obligation, is, nevertheless, in most civilized nations, a civil contract, and usually regulated by law. Upon it society may be said to be built, and out of its fruits spring social relations and social obligations and duties, with which government is necessarily required to deal.

...Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices.

...Can a man excuse his practices to the contrary because of his religious belief? To permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself. Government could exist only in name under such circumstances.

*Reynolds,* supra 8 Otto 145, 98 U.S. at 165–6.

A few of our sister states have had the occasion to treat the issue before us. The principal case of these is *Williams v. Williams,* 543 P.2d 1401 (Oklahoma 1975).

> Appellant's complaint that her constitutional right for the free exercise of religion is being violated is unfounded. The action of the trial court only dissolved the civil contract of marriage between the parties. No attempt was made to dissolve it ecclesiastically. Therefore, there is no infringement upon her constitutional right of freedom of religion. She still has her constitutional prerogative to believe that in the eyes of God, she and her estranged husband are ecclesiastically wedded as one, and may continue to exercise that freedom of religion according to her belief and conscience. Any transgression by her husband of their ecclesiastical vows, is, in this instance, outside the jurisdiction of the court.

*Williams,* supra, at 1403. *Williams* develops the point made in *Reynolds*—and does so properly.

A case out of Kansas presents a rather interesting analysis.

> In addition, the husband apparently does not share his wife's religious beliefs about divorce, since he sought the decree. Under these circumstances, to compel him to remain married because of the wife's religious beliefs would be to prefer her beliefs over his. Any such preference is prohibited by the Establishment Clause of the First Amendment. The government may not "aid one religion, aid all religions, or prefer one religion over another." *Everson v. Board of Education,* 330 U.S. 1, 15, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947).

*Sharma v. Sharma,* 8 Kan.App.2d 726, 667 P.2d 395, 396 (1983).

Another point made in *Reynolds* is presented in a somewhat different manner in a Louisiana case treating an issue similar to the one before us. Appellant, the defendant in a divorce action, argued that the grant of a divorce violated the constitutional principle of separation of church and state.

> Article VI of the Constitution of the United State provides, in pertinent part, that:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, *shall be the supreme Law of the Land;* and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. (Emphasis ours.)

We believe this answers defendant's argument that plaintiff's action is governed by some higher (spiritual) authority.

*Scheppf v. Scheppf,* 430 So.2d 370, 372, n. 2 (Crt. of Appeal of Louisiana, 1983).[4]

Persuasive though all these authorities may be, they could be inconsistent with interpretations of this Commonwealth's constitution.[5]  A review of those interpretations is, therefore, in order.

As would be expected, Section Three's rights of conscience are not unlimited.

> But broad as are these declarations of our constitution, and sacred as are the religious freedom and the rights of conscience they secure, yet it must be apparent to any person upon reflection, and has been repeatedly declared by the highest judicial authority, that they do not mean, unqualifiedly, that it is beyond the power of the legislature to enact any law which will restrain individuals from doing that which, if it were not for the law, their consciences would teach them to be their moral or religious duty.  Indeed it is impossible to see how civil government

4. For other treatments of this issue by state courts see: *Martian v. Martian,* 328 N.W.2d 844 (N.D.1983); *Trickey v. Trickey,* 642 S.W.2d 47 (Tex.App.1982).

5. It is true that it was stated in *Wiest v. Mt. Lebanon School District,* 457 Pa. 166, 174, 320 A.2d 362, 366–61 cert. den. 419 U.S. 967, 95 S.Ct. 231, 42 L.Ed.2d 183 (1974) that: "The protection of rights and freedoms secured by this section of our Constitution, however, does not transcend the protection of the First Amendment of the United States Constitution."  Except as applicable to the facts of that case and very similar facts, that can be only dicta.  State constitutional provisions have the option of expanding upon federal protections.

could exist, if the dictates of the individual conscience were in every instance where they come in conflict with the law of the land the paramount rule of action. *Commonwealth v. Herr,* 229 Pa. 132, 141, 78 A. 68, 71 (1910). More succinctly, it has been held that, "while the adoption of a belief is absolutely protected, there exists only a qualified right to act on that belief." *Morris v. Morris,* 271 Pa.Super. 19, 26, 412 A.2d 139, 142 (1979).

The dimensions of this qualified right are given in *Commonwealth v. Beiler,* 168 Pa.Super. 462, 469, 79 A.2d 134, 137 (1951), quoting the dissenting opinion in *Commonwealth v. Lesher,* 17 Serg. & R. 155, 160 (1828).

It is declared in the constitution [of 1790] * * * that 'no human authority can, in any case, control or interfere with the *rights of* conscience.' But what are those rights? Simply a right to worship the Supreme Being according to the dictates of the heart; to adopt any creed or hold any opinion whatever on the subject of religion; and to do, or forbear to do, any act, for conscience sake, the doing or forbearing of which *is not prejudicial to the public weal.* But *salus populi suprema lex,* is a maxim of universal application; and where liberty of conscience would impinge on the paramount right of the public, it ought to be restrained. (Gibson's italics.)

This language in *Lesher* presages language in *Sherbert v. Verner,* supra, 374 U.S. at 406, 83 S.Ct. at 1795, quoted in *Bear v. Reformed Mennonite Church,* 462 Pa. 330, 335, 341 A.2d 105, 107–08 (1975).

...It is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation.' *Thomas v. Collins,* 323 U.S. 516, 530, 65 S.Ct. 315, [, 322,] 89 L.Ed. 430.

This is a most substantial test. Under even this stringent analysis, appellant's claim fails. The state's interests in regulating marriage and divorce are clearly paramount. That regulation is inconsistent with the recognition of a

unilateral right of a party to remove himself from its purview as a matter of conscience. The state has the power, properly exercised within constitutional limits guaranteeing freedom of religion, to grant divorces. Thus, whether granting appellee her divorce is viewed as not infringing upon appellant's freedom of religion, as in *Williams*, supra, or as interfering with the practice of his religion, as in *Reynolds*, supra, the result reached here would be the same. To whatever extent the issuance of a divorce decree interferes with the practice of appellant's religion, it does not violate an individual's right to freedom of conscience.[6]

Legal and academic scholars may nod with approval, either wholly or halfheartedly, the decisions of the Courts in the cases cited herein to resolve a matter involving the church and state. Hopefully, the appellant will do likewise.

If not, then we believe that the only authority best understood by appellant whose religious convictions are to be admired is to quote scripture. The appropriate passage appears in the New Testament in the Gospel of St. Matthew, Chapter 22, verse 15 to 22 which reads as follows:

> Then the Pharisees went and took counsel how they might trap him in his talk. And they sent to him their disciples with the Herodians, saying, "Master, we know that thou art truthful, and that thou teachest the way of God in truth and that thou carest naught for any man; for thou dost not regard the person of men. Tell us, therefore, what dost thou think: Is it lawful to give tribute to Caesar, or not?" But Jesus, knowing their wickedness, said "Why do you test me, you hypocrites? Show me the coin of the tribute." So they offered him a denarius. Then Jesus said to them, "Whose is this image and the inscription?" They said to him, "Caesar's." Then he said to them, "Render, therefore, to Caesar the

6. It could also be concluded, as in *Sharma*, supra, that acceding to appellant's religious beliefs in this context would violate appellee's religious beliefs and work a violation of that portion of Section 3 which states: "no preference shall be given by law to any religious establishments or modes of worship."

416

things that are Caesar's, and to God the things that are God's." And hearing this they marvelled, and leaving him went off.[7]

That says it all in response to the age old conflict between civil and spiritual spheres of authority.

Order affirmed.

POPOVICH, J., concurs in the result.

---

**7.** It is not intended that the above quote from scripture be a legally binding precedent of this Court.